IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WORLD OUTREACH CONFERENCE )
CENTER, an Illinois not-for-profit )
Corporation, and PAMELA BLOSSOM, )
President of World Outreach Conference )
Center, )
                                     )    No. 06 C 2891
       Plaintiffs,              )    Wayne R. Andersen
                                     )    District Judge
      v.                            )
                                     )
CITY OF CHICAGO,            )
                                     )
       Defendant.            )

## MEMORANDUM OPINION AND ORDER

This matter is before the court on defendant City of Chicago's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, that motion is granted.

## BACKGROUND

From approximately 1926 until July, 2005, the Young Men's Christian Association ("YMCA") owned a five-floor building and adjacent parking lot located at 4 East 111th Street in Chicago, Illinois (the "Subject Property"), in the Roseland neighborhood of Chicago. The second through the fifth floors of the Subject Property contain approximately 168 single room occupancy ("SRO") units. The YMCA's use of the Subject Property as a community center with SRO units was allowable under the applicable zoning regulations when that use began, but the zoning regulations have since changed making that use a nonconforming use now.

In July, 2005, plaintiff World Outreach Conference Center ("WOCC") purchased the Subject Property. WOCC alleges that one of its main purposes is "to spread the Gospel of Jesus

the Messiah" to the surrounding community and beyond. WOCC alleges that, by purchasing the Subject Property, it intended to further WOCC's purpose by operating a Christ-oriented community center on the property and by providing shelter to the needy and homeless by renting out the SRO units located on the Subject Property.

Plaintiff Pamela Blossom ("Blossom") is the Senior Pastor of WOCC and derives her income from the corporation. In her capacity as Senior Pastor, Blossom leads, or helps to lead, worship services, Bible studies, evangelism, pastoral counseling, and other Christian ministry services and activities.

In August, 2005, WOCC applied to defendant City of Chicago (the "City") for an SRO license, which WOCC was required to obtain under the Chicago Zoning Ordinance in order to rent out the SRO units. The City denied WOCC's application at that time, instructing WOCC that, because the Subject Property was zoned B3-2, a business district, WOCC was required under the Chicago Zoning Ordinance to apply for a special use permit in order to operate a community center with SRO units. Applications for special use permits are reviewed by the City's Zoning Board of Appeals. WOCC never applied for a special use permit for the Subject Property. In November, 2005, the Chicago City Council amended the zoning of the Subject Property from B3-2 to M1-1, a manufacturing district.

In September, 2005, representatives of the Federal Emergency Management Agency ("FEMA") contacted Blossom regarding housing Hurricane Katrina victims on the Subject Property. WOCC and FEMA reached a verbal agreement pursuant to which WOCC would house Hurricane Katrina victims in 150 SRO units on the Subject Property for one year, at $750 per month for each of the 150 units rented. However, an SRO license was a precondition to FEMA's rental of the 150 SRO units. Accordingly, WOCC, along with officials from FEMA,

the Illinois Emergency Management Agency, and the Illinois Department of Human Services, sought to obtain an SRO license from the City between December, 2005, and January, 2006. The City again refused to issue WOCC an SRO license and again deferred WOCC to the Zoning Board of Appeals in order to obtain a special use permit.

On December 14, 2005, the City filed a lawsuit against WOCC in the Circuit Court of Cook County, Illinois. The City alleged that the Subject Property was being used in violation of the Chicago Zoning Ordinance because WOCC was operating a community center and a church without a special use permit. On April 7, 2006, the City voluntarily dismissed that case without prejudice.

On April 12, 2006, WOCC filed an eight-count complaint against the City in the Circuit Court of Cook County, Illinois. The City removed the case to this court on May 26, 2006, and then filed a motion to dismiss the complaint. On January 17, 2007, WOCC filed an emergency motion for a temporary restraining order ("TRO") and preliminary injunction, in which WOCC sought an order requiring the City to issue an occupancy permit for the SRO units. Between January 17, 2007, and January 31, 2007, WOCC submitted exhibits, documents, correspondence, drawings, and floor plans to the City's attorneys. After reviewing the materials, the City's Zoning Department approved WOCC's application for an SRO license. However, the final issuance of the SRO license was delayed due to numerous repairs to the SRO units and inspections that were required by the City. As a result, WOCC filed another emergency motion for a TRO and preliminary injunction on July 31, 2007. Before a ruling was made on that motion, the City issued an SRO license to WOCC on August 3, 2007.

WOCC filed a nine-count, amended complaint in this court on August 17, 2007 alleging that the City illegally refused to issue a license to WOCC so that WOCC could have rented out

3

the SRO units on the Subject Property. Notably, WOCC does not allege that the City prevented it from performing religious services on the Subject Property. Rather, WOCC's amended complaint alleges that the City's refusal to issue WOCC a license to rent the SRO units caused WOCC financial damages and reduced the number of potential attendees at WOCC's religious services. WOCC alleges that the City's actions violated WOCC's constitutional rights as well as certain federal and state statutes. Specifically, Counts I and II assert claims for violations of the "substantial burden" provision and "equal terms" provision of the Religious Land Use and Institutionalized Persons Act of 2000 ("Religious Land Use Act"), 42 U.S.C §§ 2000cc(a)(1), (b)(1), respectively. Counts III, IV, and V assert claims under the Free Exercise Clause of the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Establishment Clause of the First Amendment, respectively. Count VI asserts a claim for a violation of the Chicago Zoning Ordinance. Count VII asserts a claim for a violation of the Illinois Religious Freedom Restoration Act, 775 Ill. Comp. Stat. 35/15 (2002). Finally, in counts VIII and IX, WOCC seeks sanctions and damages for alleged violations of Illinois Supreme Court Rule 137 and Rule 11 of the Federal Rules of Civil Procedure, respectively. The City now moves to dismiss all of WOCC's claims.

## DISCUSSION

### A. *Legal Standard*

In ruling on a motion to dismiss under Rule 12(b)(6), the court must accept all well-pled allegations in the complaint as true, and draw all reasonable inferences in a light most favorable to the plaintiff. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 978 (7th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint must describe the claim with sufficient detail as to give the defendants "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl.*

*Corp. v. Twombly*, 127 S. Ct. 1955, 1964, (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, (1957)). Further, the "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Twombly*, 127 S. Ct. at 1965).

### B. Plaintiffs fail to state a claim for a violation of the substantial burden provision of the Religious Land Use Act.

The City argues that Count I fails to state a claim for a violation of the substantial burden provision of the Religious Land Use Act. The Religious Land Use Act, in relevant part, reads as follows:

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution is in furtherance of a compelling governmental interest, and is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc(a). In order to prevail on a claim under the substantial burden provision, a plaintiff must demonstrate that the regulation at issue actually imposes a substantial burden on religious exercise. *Civil Liberties for Urban Believers*, 342 F.3d 752, 760 (7th Cir. 2003). "A land-use regulation that imposes a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise – including the use of real property for the purposes thereof within the regulated jurisdiction generally – effectively impractical." *Id.* at 761.

Here, we find that requiring WOCC to apply for a special use permit was not a substantial burden on WOCC's religious exercise. When WOCC applied for an SRO license in August, 2005, the Subject Property was zoned B3-2. In such districts, community centers and religious assemblies are considered special uses, and may be allowed if approved in accordance

5

with the special use procedures set forth by the Chicago Zoning Ordinance. *See* Mun. Code of the City of Chicago, Il. §§ 17-10-0207-E, 17-3-203. As part of the special use procedures, WOCC was directed to the City's Zoning Board of Appeals, which has the power and duty to "hear and pass upon applications for special uses." Mun. Code of the City of Chicago, Il. § 17-14-0302-B. We find that the burden of going to the Zoning Board of Appeals and presenting the information required to obtain a special use permit was not "substantial" for purposes of the Religious Land Use Act. *See Civil Liberties*, 342 F.3d at 761 (finding that application of the substantial burden provision to a regulation inhibiting or constraining *any* religious exercise, including the use of property for religious purposes, would render meaningless the word "substantial" because the slightest obstacle to religious exercise incidental to the regulation of land use, however minor the burden it were to impose, could then constitute a burden sufficient to trigger the Religious Land Use Act's requirement that the regulation advance a compelling governmental interest by the least restrictive means).

WOCC contends that it was entitled to operate a community center with SRO units as a matter of right as a lawful nonconforming use under the Chicago Zoning Ordinance and that it presented evidence of its lawful nonconforming use when it first applied for an SRO license in August, 2005, and then again in December, 2005, when WOCC applied for an SRO license with FEMA. However, even assuming that such evidence had been presented, we find that requiring WOCC to petition the Zoning Board of Appeals was still not a substantial burden under the Religious Land Use Act. The Zoning Board of Appeals is "authorized to hear and decide appeals when it is alleged that there is an error in any order, requirement, decision or determination made by the zoning administrator in the administration or enforcement" of the Chicago Zoning Ordinance. Mun. Code of the City of Chicago, Il. § 17-13-1201. Therefore,

even if the City's requirement or decision that WOCC needed to obtain a special use permit in order to operate a community center with SRO units was erroneous, WOCC was still required to appeal that requirement or decision to the Zoning Board of Appeals. *See Id.* In other words, even if WOCC's use of the Subject Property was in fact a lawful nonconforming use, as WOCC contended, WOCC nevertheless was required to present its case to the Zoning Board of Appeals after its application for an SRO license was denied. *See Civil Liberties*, 342 F.3d at 764 ("No person, nor nonconforming land use, is exempt from the procedural system in place for Special Use . . . approval specifically, or the [Chicago Zoning Ordinance] generally"). We find that this requirement did not place a "substantial burden" on WOCC's religious exercise.

WOCC further argues that it did not apply to the Zoning Board of Appeals for a special use permit because Ninth Ward Alderman Anthony Beale was intent upon shutting down WOCC. According to WOCC, when an alderman opposes an application for a special use permit, it is the unwritten policy of the Zoning Board of Appeals to deny that application. However, WOCC's speculations about the intentions of Alderman Anthony Beale do not advance its claim under the substantial burden provision of the Religious Land Use Act. Because WOCC never petitioned the Zoning Board of Appeals for either a special use permit or to prove its lawful nonconforming use, WOCC cannot show that its application for an SRO license would have been denied. The fact that the City ultimately granted WOCC an SRO license in fact supports the opposite conclusion. Accordingly, because WOCC cannot show that the City placed a substantial burden on WOCC's religious exercise, Count I is dismissed

### C. *Plaintiffs fail to state a claim under the equal terms provision of the Religious Land Use Act.*

The City argues that Count II fails to state a claim under the equal terms provision of the Religious Land Use Act. The Religious Land Use Act, in relevant part, reads as follows: "No

government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b). There are three distinct kinds of equal terms statutory violations: (1) a statute that facially differentiates between religious and nonreligious assemblies or institutions; (2) a facially neutral statute that is nevertheless "gerrymandered" to place a burden solely on religious, as opposed to nonreligious, assemblies or institutions; or (3) a truly neutral statute that is selectively enforced against religious, as opposed to nonreligious, assemblies or institutions. *Vision Church v. Village of Long Grove*, 468 F.3d 975, 1003 (7th Cir. 2006). In each type of violation, the relevant comparison is between religious, as opposed to nonreligious, institutions or assemblies.

Here, WOCC has failed to identify a nonreligious group that has received more favorable treatment than WOCC. WOCC attempts to compare itself to the YMCA in order to show unequal treatment. However, the YMCA is a religious institution. WOCC concedes as much in its amended complaint. Am. Compl. ¶ 14. "WOCC makes available on the premises (as the Roseland YMCA previously did for many years) places of worship services, Bible studies, evangelism, pastoral counseling, and other Christian ministry services." *Id.* Thus, by not providing this court with a nonreligious institution as a comparator, WOCC has failed to state a claim under the equal terms provision of the Religious Land Use Act. Accordingly, Count II is dismissed.

**D.** *Plaintiffs fail to state a claim under the Free Exercise Clause.*

The City next contends that Count III fails to state a claim for a violation of the Free Exercise Clause of the First Amendment. "Under the Free Exercise Clause of the First Amendment of the United States Constitution, made applicable to state and local governments by

8

the Fourteenth Amendment, no law may prohibit the free exercise of religion." *Civil Liberties*, 342 F.3d at 762-63. In analyzing a claim under the Free Exercise Clause, the relevant inquiry is two-fold. If the law being challenged is not "neutral and of general applicability," then it "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Vision Church*, 468 F.3d at 996 (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531-32, (1993)). However, "'[a] regulation neutral on its face may, in its application, nonetheless offend the constitutional requirement for governmental neutrality if it unduly burdens the free exercise of religion,' in which case there must be 'a compelling governmental interest justifying the burden.'" *Vision Church*, 468 F.3d at 996 (quoting *Jimmy Swaggert Ministries v. Bd. of Equalization of Cal.*, 493 U.S. 378, 384-85 (1990)). Government action "that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality." *Church of the Lukumi Babalu Aye*, 508 U.S. at 532. That is, "[t]he Free Exercise Clause protects against governmental hostility which is masked, as well as overt." *Id.* However, "in the context of the Free Exercise Clause, plaintiff must first establish that his right to practice religion was burdened in a significant way." *Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005).

Here, WOCC alleges that by insisting that WOCC obtain a special use permit, the City infringed upon its First Amendment rights to the Free Exercise of Religion. The Seventh Circuit has recognized that the analysis for claims brought under the Free Exercise Clause of the First Amendment is similar to that for claims brought under the substantial burden provision of the Religious Land Use Act. *See Vision Church*, 468 F.3d at 996-97. As explained *supra*, Part B, requiring WOCC to petition the Zoning Board of Appeals, either for a special use permit or to prove its lawful nonconforming use on appeal, was not a substantial burden to WOCC's religious

9

exercise under the Religious Land Use Act. Likewise, we find that the same requirement does not constitute a violation of the Free Exercise Clause of the First Amendment. Accordingly, Count III is dismissed.

### E. *Plaintiffs fail to state a claim under the Equal Protection Clause.*

The City argues that Count IV fails to state a claim for a violation of the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. "Typically, an Equal Protection claim focuses on the denial of a fundamental right or disparate treatment of persons depending on the claimant's suspect classification." *Martin v. Shawano-Gresham Sch. Dist.*, 295 F.3d 701, 712 (7th Cir. 2002). "'If a statute or municipal ordinance classifies by race, alienage, or national origin, we subject the legislative action to 'strict scrutiny and it will be sustained only if it is suitably tailored to serve a compelling state interest.'" *Vision Church*, 468 F.3d at 1000 (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440, (1985)). However, "absent a fundamental right or suspected class, to demonstrate a viable Equal Protection claim in the land use context, a plaintiff must demonstrate governmental action wholly impossible to relate to legitimate governmental objectives." *Forseth v. Village of Sussex*, 199 F.3d 363, 370-71 (7th Cir. 2000). "[T]he fundamental rights theory of equal protection scrutiny applies only to laws that effect 'grave interference with important religious tenets or . . . affirmatively compel congregants to perform acts undeniably at odds with fundamental tenets of their religious beliefs.'" *Civil Liberties*, 342 F.3d at 766 (quoting *Griffin High School v. Illinois High School Athletic Assoc.*, 822 F.2d 671, 674 (7th Cir. 1987)). However, "laws that are neutral on their face may still violate the Constitution in their

10

application." *Vision Church v. Village of Long Grove*, 397 F. Supp. 2d 917, 931 (N.D. Ill. 2005).

Illustrating this point, the Supreme Court has found that

> [t]hough the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution.

*Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886).

Here, WOCC does not allege that the Chicago Zoning Ordinance fails on its face to comply with the requirements of the Equal Protection Clause. Rather, WOCC asserts that the manner in which the City applied the Chicago Zoning Ordinance resulted in WOCC being treated differently from a similarly situated institution, the YMCA. Specifically, WOCC contends that the City infringed upon its rights to Equal Protection by requiring it to obtain a special use permit, even though the YMCA was not required to obtain one, in order to operate a community center with SRO units and to allow churches to meet for worship on the Subject Property from 2000 to 2005. Similar claims have been referred to as "class of one" equal protection claims. *See Vision Church*, 397 F. Supp. 2d at 931. To establish a "class of one" claim, a plaintiff must show that: "(1) it has been intentionally treated differently from others similarly situated; and (2) there is no rational basis for the difference in treatment or the cause of the different treatment is a totally illegitimate animus toward [it]." *Maulding Dev., LLC v. City of Springfield*, 453 F.3d 967, 970 (7th Cir. 2006). The Seventh Circuit has recognized that it is difficult to proceed with such "class of one" claims. *Id.* at 969.

We find that WOCC has failed to sufficiently plead its class of one claim. Although WOCC alleges that the City treated it differently than the YMCA by requiring WOCC to obtain a special use permit, the rational basis for the different treatment is clear. The current version of

11

the Chicago Zoning Ordinance requires community centers and religious assemblies to apply for special use permits, but the YMCA had no such requirement because the City had already determined the YMCA's use of the Subject Property to be a lawful nonconforming use. *See* Mun. Code of the City of Chicago, Il §§ 17-10-0207-E, 17-3-203. WOCC's use of the Subject Property had not previously been determined by the City to be a lawful nonconforming use, however, and thus WOCC was required obtain a special use permit under the Chicago Zoning Ordinance. Because there is a rational basis for the City's requirement that WOCC obtain a special use permit, but not the YMCA, Count IV fails to state a claim under the Equal Protection Clause. Thus, Count IV is dismissed.

### F.     *Plaintiffs fail to state a claim under the Establishment Clause.*

The City argues that Count V fails to state a claim under the Establishment Clause of the First Amendment. The First Amendment to the Constitution of the United States provides, in relevant part, that "Congress shall make no law respecting an establishment of religion…" U.S. Const. amend. I, cl. 1. In evaluating an Establishment Clause claim, "the touchstone for our analysis is the principle that the 'First Amendment mandates governmental neutrality between religion and religion, and between religion and nonreligion.'" *McCreary County v. ACLU*, 545 U.S. 844, 860 (2005) (quoting *Eperson v. Arkansas*, 393 U.S. 97, 104 (1968)). "When the government acts with the ostensible and predominant purpose of advancing religion, it violates that central Establishment Clause value of official religious neutrality, there being no neutrality when the government's ostensible object is to take sides." *McCreary*, 545 U.S. at 860. "Specifically, a government policy or practice violates the Establishment Clause if (1) it has no secular purpose, (2) its primary effect advances or inhibits religion, or (3) it fosters an excessive entanglement with religion." *Vision Church*, 468 F.3d at 991 (citing *Lemon v. Kurtzman*, 403

U.S. 602, 612-13 (1971)). "The Establishment Clause also prohibits the government from favoring one religion over another without a legitimate secular reason." *Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005).

The City argues that its application of the Chicago Zoning Ordinance did not violate the Establishment Clause. Specifically, the City contends that requiring WOCC, but not the YMCA, to obtain a special use permit does not demonstrate animosity towards religious institutions or an attempt to prohibit any religious activities. We agree. As stated above, the YMCA's use of the Subject Property had already been determined to be a lawful nonconforming use. However, such a determination had not been made as to WOCC's use of that same property. As a result, WOCC, as a new owner of the Subject Property, was required to petition the Zoning Board of Appeals to either obtain a special use permit or prove its lawful nonconforming use. We find that this requirement does not demonstrate any lack of "government neutrality between religion and religion." *See McCreary*, 545 U.S. at 860. As a result, Count V fails to state a claim for a violation of the Establishment Clause. Accordingly, Count V is dismissed.

### G. *Plaintiffs fail to state a claim for a violation of the Chicago Zoning Ordinance.*

The City argues that Count VI fails to state a claim for a violation of the Chicago Zoning Ordinance because that claim is barred by the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"), 745 ILCS 10/1-1-1 *et seq*. The Tort Immunity Act, in relevant part, reads as follows:

> A local public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order or similar authorization where the entity or its employee is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked.

13

*Id.* § 10/2-104. The purpose of the Tort Immunity Act "is to protect local public entities and public employees from liability arising from the operation of government." *Id.* § 10/1-101.1(a). Because the City, as a municipal corporation, is considered a "local public entity" under the Tort Immunity Act, *id.* § 10/1-206, WOCC is barred from recovering damages against the City for its official actions. *See Vision*, 397 F. Supp. 2d at 934 ("Under the Illinois Tort Immunity Act, municipalities are immune from damages resulting from their legislative decisions"); *see also Vil. of Bloomingdale v. CDG Enterprises, Inc.*, 752 N.E.2d 1090, 1099-1100 (Ill. 2001) ("section 2-104 plainly grants immunity for injury caused by the 'denial of any permit' and is, therefore, controlling"). Accordingly, Count VI is dismissed.

### H. Plaintiffs fail to state a claim under the Illinois Religious Freedom Restoration Act.

The City argues that Count VII fails to state a claim under the Illinois Religious Freedom Restoration Act. The Illinois Religious Freedom Act provides, in relevant part:

> Government may not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, unless it demonstrates that application of the burden to the person is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest.

775 ILCS 35/15. In order to show a substantial burden on religious practice, a plaintiff must demonstrate that the governmental action "prevents him from engaging in conduct or having a religious experience that his faith mandates." *Diggs v. Snyder*, 333 Ill. App. 3d 189, 195 (5th Dist. 2002) (quoting *Stefanow v. McFadden*, 103 F.3d 1446, 1471 (9th Cir. 1996)).

The City contends that WOCC was not prevented from engaging in conduct that its faith mandates by being required to obtain a special use permit or prove its lawful nonconforming use to the Zoning Board of Appeals. We agree. The basis for our decision in dismissing Count I is also applicable here. *See supra*, Part B. Specifically, we find that the requirement to petition the

Zoning Board of Appeals, either for a special use permit or to prove a lawful nonconforming use on appeal, was not a substantial burden to WOCC's religious exercise and that WOCC's allegations concerning Alderman Anthony Beale's motives do not make it one. *See Civil Liberties*, 342 F.3d at 766 ("Whatever the obstacles the [Chicago Zoning Ordinance] might present to a church's ability to locate on a specific plot of Chicago land, they in no way regulate the right, let alone interfere with the ability, of an individual to adhere to the central tenets of his religious belief."). We therefore grant the City's motion to dismiss Count VII.

### I. *Plaintiffs fail to state a claim for violations of Illinois Supreme Court Rule 137 and Federal Rule 11.*

The last two Counts of plaintiffs' complaint are for alleged violations of Illinois Supreme Court Rule 137 and Federal Rule of Civil Procedure 11. However, we find nothing in the record that calls for sanctions in this case. Therefore, we grant the City's motion to dismiss Counts VIII and IX.

### CONCLUSION

For all of the foregoing reasons, the City's motion to dismiss [70] is granted with respect to all counts. This case is terminated.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: May 13, 2008

15